IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RUDY CHESTANG, III                                            PLAINTIFF

VERSUS                              CIVIL ACTION NO: 5:10-cv-67-DCB-JMR

ALCORN STATE UNIVERSITY; ALCORN
STATE UNIVERSITY BOARD OF TRUSTEES;
AND DR. ALVIN SIMPSON, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY                                 DEFENDANTS

**ORDER**

This cause comes before the Court on Defendant Alvin Simpson's Motion to Dismiss, or In the Alternative, Motion for Summary Judgment [docket entry nos. 46 and 47] and Motion to Dismiss for Lack of Subject Matter Jurisdiction and/or Failure to State a Claim Upon Which Relief Can Be Granted [docket entry no. 56]. Having carefully considered said Motions, the Responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, this Court finds and orders as follows:

I.   FACTS AND PROCEDURAL HISTORY

Plaintiff, Rudy Chestang, III, was a student at Alcorn State University from the fall of 2005 through the spring of 2008. Defendant Alvin Simpson apparently served as Chestang's advisor and taught a class in which Chestang was enrolled in the spring of 2008.[1]  Chestang alleges that Simpson sexually harassed him by

---

[1] The Complaint does not specify when the alleged harassment occurred but exhibits to the Complaint and to Simpson's Motion indicate that Chestang was a student of Simpson's in the spring of 2008 and thus the alleged harassment must have occurred then.

making suggestive comments and, on one occasion, rubbing against him, until Chestang eventually withdrew from Alcorn and transferred to another university.

Chestang filed suit against Alcorn, its Board of Trustees, and Dr. Simpson, both individually and in his official capacity, on June 10, 2009 in the United States District Court for the Northern District of Illinois.  The District Court for the Northern District of Illinois transferred the action to this Court on April 19, 2010.  The Complaint asserts claims for sexual harassment and discrimination in violation of Title IX of the Education Act of 1972, 20 U.S.C. § 1681, *et seq.*; violation of due process and equal protection under 42 U.S.C. § 1983; and intentional infliction of emotional distress, negligence, and assault and battery under state law.  Chestang did not serve Simpson with a copy of the Complaint until October 27, 2009, 139 days after the Complaint was filed.

Simpson filed a Motion to Dismiss, or in the Alternative a Motion for Summary Judgment on April 23, 2010 arguing that he had not been properly served with the Complaint; that Title IX claims cannot be asserted against an individual; and that the state law claims had not been exhausted as required by the Mississippi Tort Claims Act.  Simpson filed a second Motion to Dismiss on June 20, 2010 urging dismissal because he is immune from suit in his official capacity based on the Eleventh Amendment; Section 1983 claims do not lie against persons in their official capacity; the

facts as alleged do not state claims for violation of due process or equal protection; and the state law claims are time-barred, procedurally bared, or otherwise inactionable under the Mississippi Tort Claims Act.

## II.   STANDARD FOR MOTION TO DISMISS

When considering a motion to dismiss under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view the facts in a light most favorable to the plaintiff. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(citations omitted). To have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Id. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546. Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1914)(overruled on other grounds)).

## II. ANALYSIS

### A.  Failure to Properly Serve Complaint

Simpson argues that the Complaint should be dismissed for insufficient service of process pursuant to Federal Rule of Civil Procedure 4(m) because it was served on him more than 120 days after the Complaint was filed.  That Rule provides:

> If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the Plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Chestang does not dispute that Simpson was served more than 120 days after the Complaint was filed (139 days to be exact); instead, he argues that good cause exists to excuse timely service because Simpson received notice of the lawsuit and a copy of the Complaint through his attorneys in connection with

4

Chestang's request that Simpson waive service.[2] The exact sequence of events is unclear from the record before the Court but it appears that Chestang's attorney, Brian Nix, mailed a copy of the Complaint and a request that Simpson waive service to Michael Bonner, an attorney for Simpson, around the same time the Complaint was filed on June 10, 2009. Shortly therafter, on July 6, 2009, an attorney named Alan Purdie wrote to Nix, stating that Purdie represented Simpson for purposes of Chestang's suit and any correspondence should be addressed to Purdie. In that July 6 letter, Purdie further informed Nix that:

> Simpson advises he has not been served with process of the Court, and I am advised that you provided his private attorney, Mike Bonner, esquire, with a copy of the complaint and a waiver. Before waiving process, I wanted to inquire as to whether you would agree to transfer venue of this action to the proper court in Mississippi.

---

[2] With respect to the issue of timeliness of service only, the Court treats Simpson's Motion as a Motion for Summary Judgment pursuant to Rule 56 because the parties have attached to their papers materials outside the pleadings. <u>Kaufman v. Robinson Property Group, L.P.</u>, 661 F.Supp.2d 622, 624-25 (N.D. Miss. 2009)(holding that a motion to dismiss is converted to a motion for summary judgment if a court considers matters outside the pleadings). Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, the parties do not dispute the facts; indeed, there is a clear written record of the correspondence between the parties regarding service. Instead, the parties dispute the legal effect of those facts and thus resolution of this issue on summary judgment is appropriate.

July 6, 2009 letter [docket entry no. 58-2]. Nix then responded to Purdie that he was unable to agree to transfer of the case to Mississippi but did not mention service. The parties apparently never agreed to transfer the case to Mississippi (it was transferred only after the Illinois court granted Simpson's Motion to Transfer which Chestang opposed) or for Simpson to waive service of process. Chestang then served Simpson on October 27, 2009, outside the time permitted for service of process under the federal rules.

Rule 4(m) permits a district court to dismiss a case without prejudice if the plaintiff fails to serve the defendant within 120 days of filing the complaint. Millan v. USAA Gen. Indemn. Co., 546 F.3d 321, 325 (5th Cir. 2008)(citing Thompson v. Brown, 91 F.3d 20, 21 (5th Cir. 1996)). If, however the plaintiff can establish good cause for failing to serve the defendant, the court must extend the time for service. Id. Good cause requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." Lambert v. United States, 44 F.3d 296, 299 (5th Cir. 1995). Here, the Court finds that Chestang cannot establish good cause for failing to serve Simpson. Chestang's attorney, Nix, wrote to Simpson's former attorney, Bonner, and to Simpson's present attorney, Purdie, requesting that Simpson waive service. Purdie specifically informed Nix that Simpson would not

agree to waive service unless Chestang agreed to transfer the venue to Mississippi. Accordingly, Nix was undoubtedly aware that Simpson had not agreed to waive service of process. Moreover, the fact that Nix requested that Simpson waive process indicates that he knew that service (or waiver) was required. Nix simply failed to meet that requirement. He has not shown good cause for that failure. Gonzales v. Thomas Built Buses, Inc., 268 F.R.D. 521, 526-27 (M.D. Penn. 2010)(holding plaintiff did not shown good cause for failure to serve where sent request to defendant to waive service and defendant refused).

Even if the plaintiff lacks good cause (as is the case here), the court has discretionary power to extend the time for service. Millan, 546 F.3d at 325. A discretionary extension may be warranted, "for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Id. (quoting Fed. R. Civ. P. 4(m) advisory committee's note (1993)). Here, the Complaint does not state when the events that form the basis of this lawsuit allegedly occurred but the Court surmises that they occurred primarily in the spring of 2008. As it is now the spring of 2011, the Court finds that the statutes of limitations on most of Chestang's claims likely have run. See B.L. Develop. Corp., 940 So.2d 961, 964-65, 67 (Miss. Ct. App. 2006)(holding one-year statute of limitations governs claims for assault and battery and

intentional infliction of emotional distress arising out of sexual harassment); Cuvillier v. Taylor, 503 F.3d 397, 401 (Miss. 2007) (holding 1983 suits borrow from the forum state's general personal injury limitations period which, in Mississippi, is three years); Menard v. Bd. of Trustees of Loyola Univ., 2004 WL 856641, *6 (E.D.La. 2004)(looking to Louisiana law for statute of limitations on Title IX claim; presumably Title IX claims in Mississippi would borrow the three-year Mississippi general personal injury limitations period).

Where the applicable statute of limitations likely bars further litigation, the Fifth Circuit reviews dismissals for want of service of process under the heightened standard used to review a dismissal with prejudice. Millan, 546 F.3d at 326. Dismissals with prejudice are warranted only where "'a clear record of delay or contumacious conduct by the plaintiff' exists and a 'lesser sanction would not better serve the interests of justice.'" Id. (quoting Gray v. Fid. Acceptance Corp., 634 F.2d 226, 227 (5th Cir. 1981)). Additionally, where the Fifth Circuit has affirmed dismissals with prejudice, it has generally found at least one of three aggravating factors: (1) delay caused by the plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct. Id. (citing Price v. McGlathery, 792 F.2d 472, 474 (5th Cir. 1986)). Here, the Court finds that there exists neither a clear record of delay and

contumacious conduct nor any of the relevant aggravating factors to justify dismissal.  First, the delay in service was minimal.  As noted, the plaintiff served Simpson 139 days after the filing of the Complaint, a mere 19 days late.  The Fifth Circuit has held that "clear delay" must be "longer than a few months" and "characterized by significant periods of total inactivity." Id. at 327.  Second, while Chestang's attorney was negligent, "contumacious conduct" requires something significantly more, such as a "stubborn resistance to authority."  There is no evidence of such conduct here.  Lastly, none of the "aggravating factors" exist with respect to Chestang's failure to timely serve Simpson.  Indeed, it is hard to imagine how Simpson could have been prejudiced by the failure of service since the record is clear that he received a copy of the Complaint shortly after the lawsuit was filed.  In sum, this Court holds that although Chestang has not shown good cause for his failure to serve Simpson, the Court will nonetheless exercise its discretionary powers under Rule 4(m) to grant an extension of time for service.  Accordingly, the Court finds that service was timely and denies Simpson's Motion to Dismiss the Complaint pursuant to Rule 4.

**B.   Title IX Claims**

Simpson next argues for dismissal of Chestang's Title IX claims because such claims cannot be asserted against individuals.  Chestang makes no response to Simpson's argument in this regard.

Nevertheless, it is clear that Title IX permits actions only against "programs or activities that receive federal financial assistance" and not against individuals. Allegria v. Texas, 2007 WL 3256586, *6 (S.D. Tex. 2007)(citing Rowinsky v. Bryan Ind. Sch. Dist., 80 F.3d 1006, 1012-13 (5th Cir. 1996)). Accordingly, Chestang's claims against Simpson under Title IX must be dismissed.

**C.   State Law Claims**

Simpson next argues that Chestang's state law claims should be dismissed for failure to comply with the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11-46-11(1), which requires that plaintiffs file a notice with the chief executive officer of the governmental entity to be sued ninety days prior to filing suit. Chestang did not respond to Simpson's argument in this regard and thus apparently concedes that he failed to comply with the MTCA's notice requirement. The Mississippi Supreme Court has held that the "notice of claim requirement imposes a condition precedent on the right to maintain an action" and is a jurisdictional prerequisite. Gale v. Thomas, 759 So.2d 1150, 1159 (Miss. 1999). Accordingly, Chestang's claims under Mississippi state law are procedurally barred and must be dismissed. Id.

**D.   Section 1983 Claims**

Once the Title IX and state law claims against Simpson are dismissed, the only remaining claims are those Chestang asserts under 42 U.S.C. § 1983 for violation of due process and of equal

protection.  Chestang asserts claims against Simpson in both his official and individual capacities.

    i.   *Official Capacity Claims*

Simpson moves to dismiss the official capacity claims against him both on the grounds that he is immune from suit under the Eleventh Amendment and because § 1983 claims do not lie against arms of the state or people sued in their official capacity.  The Court need not reach the Eleventh Amendment issue because Simpson is correct that a § 1983 claim does not lie against him in his official capacity.  In the context of a § 1983 claim, a suit against a state official in his or her official capacity is not a suit against the official but is a suit against the official's "office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citations omitted). Accordingly, Chestang's § 1983 claim against Simpson in his official capacity is treated as a claim against Alcorn State.  But the Civil Rights Act creates liability only for "persons."  42 U.S.C. § 1983.  A state is not a "person" within the meaning of § 1983 and thus a § 1983 claim does not lie against a State.  Will, 491 U.S. at 71 (1989).  Alcorn State University is an arm of the State of Mississippi.  Senu-Oke v. Jackson State Univ., 521 F.Supp.2d 551, 556 (S.D. Miss. 2007).  For

this reason, Chestang's claims against Simpson in his official capacity are claims against the state of Mississippi which are not actionable under § 1983. Simpson's Motion to Dismiss is granted as to the official capacity § 1983 claims against him.

    ii. *Individual Capacity Claims*

Simpson moves to dismiss the individual capacity § 1983 claims for violation of substantive due process and equal protection on the grounds that he is entitled to qualified immunity. In <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) the Supreme Court mandated a two-part test for deciding qualified immunity claims, both parts of which must be satisfied to abrogate a defendant's qualified immunity : (1) whether facts alleged or shown by the plaintiff make out the violation of a constitutional right; and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct. Simpson argues that the facts as alleged in the Complaint do not state the violation of a constitutional right under either the due process clause or the equal protection clause.

    a. Due Process

The substantive component of the Fourteenth Amendment's due process clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 125 (1992). Generally, the Supreme Court has held that the substantive component of the due process clause is violated by

executive action "only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998). Put another way, a "typical state-law tort claim" does not rise to the level of a constitutional tort that violates substantive due process. Collins, 503 U.S. at 128. Simpson argues that Chestang has not alleged behavior that "shocks the conscience" here and thus the substantive due process claim must be dismissed. This Court agrees.

Chestang alleges, essentially, unwanted sexual advances by Simpson. Those unwanted advances allegedly took the form of several telephone calls and in-person conversations as well as one incident when Simpson "rubbed against [Chestang's] body." Compl. at ¶ 19. Though such behavior is no doubt inappropriate between a professor and a student and would likely violate most Universities' handbooks, it does not rise to the level of activity that "shocks the conscience" such that it violates substantive due process. Unwanted sexual advances by an adult male to another adult male are easily distinguishable from the type of conduct that the Fifth Circuit has held violates due process, for example where an adult teacher sexually molested a child. Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443 (5th Cir. 1994) (holding due process violation where child was sexually molested by teacher). Though a substantive due process right to bodily integrity clearly exists,

13

the Fifth Circuit and other circuit have recognized that only the most egregious misconduct violates that right. Morris v. Dearborne, 181 F.3d 657, 666 (5th Cir. 1999)(holding no due process violation where teacher sat four-year-old child on lap and guided child's hand while typing sexually explicit words which the child did not understand); Klein v. McGowan, 198 F.3d 705, 710 (8th Cir. 1999)(repeated instances of verbal sexual harassment in workplace did not rise to level of shocking the conscience to establish due process violation); Abeyta v. Martinez, 77 F.3d 1253, 1255-56 (10th Cir. 1996)(defendant teacher's calling plaintiff high school student a prostitute and permitting other students to verbally harass her did not rise to the level of a substantive due process violation). Because the Court holds that there was no constitutional violation here, it need not reach the second step of the qualified immunity analysis and Simpson's Motion is granted as to Chestang's substantive due process claim.

  b. Equal Protection

With respect to the equal protection claim, Simpson argues that Chestang has not sufficiently alleged intentional discrimination against him as a member of a particular class. However, there is no question that sexual harassment is a deprivation of the right to equal protection and violates the Fourteenth Amendment. Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 550 (5th Cir. 1997). Though the sexual harassment in

Southard arose in the employment context, other circuits have found a violation of equal protection where the alleged harassment occurred in the university setting between a professor and a student. Jennings v. Univ. of N. Carolina, 444 F.3d 255, 293-94 (4th Cir. 2006); Hayut v. State Univ. of New York, 352 F.3d 733, 744 (2d Cir. 2003). Though the Court cannot determine from the face of the Complaint whether the alleged conduct was pervasive and severe enough to create a hostile environment that violated Chestang's equal protection rights, e.g., Hayut, 352 F.3d at 745, the Complaint at least meets the minimal pleading standards required to state a valid equal protection claim.

Simpson also argues that the equal protection claim is invalid because the Supreme Court abolished so-called "class of one" equal protection claims in Engquist v. Oreg. Dep't of Agric., 553 U.S. 591(2008). But Engquist did not abolish all "class of one" claims, it only eliminated those in the context of public employment. Id. at 607. Chestang was not a public employee and thus Engquist is inapplicable here.

Because Chestang has alleged the violation of a valid constitutional right, the Court must move on to the second step of the qualified immunity analysis to determine whether the right to be free from sexual harassment was clearly established when the alleged conduct occurred. Brown v. Miller, 519 F.3d 231, 236. "To be clearly established for purposes of qualified immunity, the

15

contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  There need not be commanding precedent that holds the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations." Id. at 236-37 (citations omitted).

Here, the right to be free from sexual harassment was clearly established by the time of the alleged conduct in the spring of 2008; indeed, Southard had been decided over ten years before and relied on Supreme Court decisions also holding that sexual harassment by a state actor violates the equal protection clause. E.g., Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1997); Davis v. Passman, 442 U.S. 228, 234-35 (1979).  The fact that the harassment alleged by Chestang is in the professor/student context rather than the employer/employee context does not render the right any less established.  The unlawfulness of sexual harassment by a state actor was sufficiently apparent from Southard to put a reasonable official on notice that sexual harassment violates that right.  Accordingly, Simpson is not entitled to qualified immunity as to Chestang's equal protection claim and the Motion to Dismiss as to that claim is denied.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendant's Motions to Dismiss [docket entries no. 46, 47, and 56] are **GRANTED** as to the

Plaintiff's claims under Title IX (Counts I and II), the due process clause of the Fourteenth Amendment (Count III) and Mississippi state law (Counts IV, V, and VI).

**IT IS FURTHER ORDERED** that the Defendant's Motions to Dismiss are **DENIED** as to the Plaintiff's claim under the equal protection clause of the Fourteenth Amendment (Count III).

**SO ORDERED**, this the 11th day of May, 2011.

   s/ David Bramlette   
**UNITED STATES DISTRICT JUDGE**
